IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 6, 2007

## CARL MCINTOSH v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Madison County**
**No. C-05-423     Donald Allen, Judge**

---

**No. W2006-01074-CCA-R3-PC  - Filed June 28, 2007**

---

The petitioner, Carl McIntosh, was convicted of one count of selling 0.5 gram or more of cocaine (Class B felony), one count of delivering 0.5 gram of cocaine (Class B felony), and two counts of simple possession (Class A misdemeanor). The convictions for selling and delivery were merged, and the counts of simple possession were merged. He was sentenced to twelve years in the Department of Correction for the Class B felony and to eleven months and twenty-nine days for the Class A misdemeanor, to be served consecutively to the Class B felony for a total effective sentence of twelve years, eleven months, and twenty-nine days. He appealed, and a panel of this court affirmed his convictions. State v. Carl McIntosh, No. W2003-02359-CCA-R3-CD, 2005 Tenn. Crim. App. LEXIS 303, at *1 (Tenn. Crim. App. at Jackson, Mar. 30, 2005), perm. app. denied (Tenn. Aug. 29, 2005). Here, he appeals the post-conviction court's denial of relief and contends that trial counsel was ineffective. The petitioner specifically contends that counsel did not meet with him prior to trial, failed to adequately investigate the confidential informant, failed to discuss the petitioner's testimony with him prior to trial, and failed to object to a Tennessee Bureau of Investigation (TBI) forensic report used at trial. After review, we affirm the judgment from the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

George Morton Googe, District Public Defender, and Gregory D. Gookin, Assistant Public Defender, for the appellant, Carl McIntosh.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Alfred L. Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Facts and Procedural History

The facts of the underlying case were summarized on direct appeal as follows:

The Defendant was indicted for the sale of 0.5 grams or more of cocaine on October 5, 2001, in count one; for the delivery of 0.5 grams or more of cocaine on October 5, 2001, in count two; for the sale of 0.5 grams or more of cocaine on October 9, 2001, in count three; and for the delivery of 0.5 grams or more of cocaine on October 9, 2001, in count four.

The following evidence was presented at the Defendant's trial: Roy Lake worked for the Jackson-Madison County Metro Narcotics Unit as a confidential informant in 2001. Mr. Lake arranged to make two separate purchases of cocaine from Defendant on October 5 and October 9, 2001. Sergeant Billy Carneal and Investigator Tyreece Miller, who were assigned to the narcotics unit in 2001, monitored the sales. Both transactions followed the same procedure. Mr. Lake met the two officers at the fairgrounds in Jackson. The officers searched Mr. Lake and his truck and then gave Mr. Lake $50.00 to purchase the drugs. Mr. Lake was wired with an audio transmitter which was monitored by Sergeant Carneal. Mr. Lake drove to Defendant's residence, and Sergeant Carneal and Investigator Miller parked some thirty yards away. Although the porch light was visible from the officers' vantage point, neither officer saw the Defendant while Mr. Lake was at his house. In a few minutes, Mr. Lake returned to his truck and drove back to the fairgrounds. The officers searched Mr. Lake and his truck again, and Mr. Lake handed over the drugs he had bought from the Defendant.

Brian Eaton, a special agent with the Tennessee Bureau of Investigation, testified that the cocaine purchased from the Defendant on October 9, 2001, weighed 0.8 grams. Agent Eaton said that Lisa Mays originally tested the cocaine purchased from the Defendant on October 5, 2001, and determined that the cocaine weighed 0.5 grams. Agent Mays did not testify at trial. Because Agent Mays no longer worked for the TBI, Agent Eaton retested the drugs the day before the Defendant's trial on October 14, 2002. The second test showed that the cocaine purchased on October 5, 2001 weighed 0.4 grams. Agent Eaton explained that the difference in weight was attributed to the consumption of part of the drugs during the first test. Agent May's forensic chemistry report dated October 31, 2001, was introduced into evidence without objection by the Defendant.

Defendant testified in his own behalf and denied that he sold cocaine to Mr. Lake. The Defendant said that he and Mr. Lake had previously worked together, but that he had not seen Mr. Lake for awhile prior to October 5, 2001, when Mr. Lake stopped by his house on that date. He and Mr. Lake conversed for a few minutes, and then Mr. Lake said that he had to use the restroom. When he came out, Mr. Lake left the Defendant's house. The Defendant said that he was at a neighbor's house on

October 9, 2001, and did not see Mr. Lake on that date. On cross-examination, the Defendant conceded that he had not held a full time job since 2000, but said that he occasionally worked at his sister's funeral home. He said that he owned two automobiles but said that he did not own the Ford Mustang in front of his house.

Based upon this evidence, a jury convicted the Defendant of sale of 0.5 grams or more of cocaine on October 5, 2001, in count one and for the delivery of 0.5 grams or more of cocaine on October 5, 2001, in count two, both Class B felonies. The jury convicted the Defendant of the lesser included offense of simple possession on October 9, 2001, a Class A misdemeanor, in counts three and four. The trial court merged the Defendant's conviction in count one with his conviction in count two, and merged his conviction in count three with his conviction in count four. Following a sentencing hearing, the trial court sentenced the Defendant as a Range I, standard offender, to twelve years for his felony conviction and eleven months, twenty-nine days for his misdemeanor conviction. The trial court ordered the Defendant's misdemeanor sentence to be served consecutively to his felony sentence for an effective sentence of twelve years, eleven months and twenty-nine days. The trial court ordered the Defendant's sentences for his current convictions to run consecutively to his unexpired prior sentences.

State v. Carl McIntosh, No. W2003-02359-CCA-R3-CD, 2005 Tenn. Crim. App. LEXIS 303, at *1 (Tenn. Crim. App. at Jackson, Mar. 30, 2005), perm. app. denied (Tenn. Aug. 29, 2005).

The only witnesses who testified during the post-conviction hearing were the petitioner and his trial counsel. Counsel testified he had practiced law for thirty years and, at the time of the hearing, his practice focused solely on criminal defense law. Counsel testified that he met with the petitioner face-to-face on three or four occasions, including one meeting at the penitentiary where the petitioner was held. Additionally, counsel contacted the petitioner through written correspondence. He did not file a motion to suppress the audiotapes of the drug transactions because he thought the tapes were of poor quality. He said his experience was that poor quality audiotapes opened a lot of argument for the defendant because, in the absence of an accurate representation of the events, the State is asking the jury to believe a witness working as a bounty hunter with the State to get himself out of trouble. He said that he had found this strategy effective in handling these types of drug cases. He said he did not discuss potential alibi witnesses with the petitioner because the petitioner never said that he was not present during the transactions but, instead, said that he was not the seller.

Counsel testified that he received several letters from the petitioner and that he responded appropriately. Counsel said that he did not make a hearsay objection when the TBI witness testified to the contents of a former TBI agent's report regarding the weight of the cocaine. Counsel said his entire strategy of the case was to point out what he saw as "sloppy" lab work, "sloppy" police work, and the State's reliance on an informant who was under the influence when testifying at trial. He

said the weight of the cocaine was entered at trial through the testimony of a police officer who had field tested it prior to turning the drugs over to the TBI.

Counsel said he advised the petitioner that taking the stand could subject him to damaging questions. He also said a jury member told him the jury was "probably going to acquit him of both counts" had the petitioner not taken the stand. Counsel stated that the decision to testify was solely the petitioner's, because counsel did not want him to testify. He told the petitioner that the State had not made a particularly strong case. Counsel testified that he discussed the petitioner's potential trial testimony with him prior to trial.

On cross-examination, counsel said that he filed a motion to prevent the State from using the petitioner's prior conviction for sale of cocaine. He said he was trying to protect the petitioner's interests. Counsel said he had tried a "hundred" cases relating to the sale and delivery of cocaine and that "I didn't do it" was a typical defense. The first difference of opinion between counsel and the petitioner occurred when the petitioner wanted to testify. Counsel testified that the case "boiled down" to whether the jury believed the informant or the petitioner. He said the only thing he could have done to make a difference in the outcome of the trial would have been to keep the petitioner off the stand, but counsel said that the decision to testify was the petitioner's.

The petitioner testified that counsel was unprepared for trial. He also said that he never met with counsel before trial and specifically stated that counsel did not meet with him while he was in jail. He said that he wrote letters to counsel but never received a response. The petitioner testified that he never spoke with counsel about his testimony until after the State presented its case. He said he felt he needed to testify because he was not satisfied with counsel's performance. The petitioner claimed that he told counsel to object to the testimony about the TBI forensic report, based on hearsay grounds.

On cross-examination, the petitioner admitted that the outcome of the case "boiled down" to whether the jury believed him or the confidential informant. The petitioner admitted that a narcotics officer weighed the cocaine from the first transaction prior to submitting it to the TBI. He also acknowledged that counsel cross-examined the confidential informant and elicited testimony that the informant was working for the police because of his own arrest.

The post-conviction court found that the petitioner failed to carry his burden of proving that he received ineffective assistance of counsel and, therefore, denied the petition for post-conviction relief. The court credited counsel's testimony that he met with the petitioner on multiple occasions. The court recalled that counsel thoroughly cross-examined the confidential informant about his motive for participating in the drug transactions and, specifically, that counsel did a "good job of trying to impeach his credibility." The court also credited counsel's testimony that he tried to convince the petitioner that he did not need to testify and that this decision was left to the petitioner.

-4-

<u>Analysis</u>

On appeal, the petitioner contends that he received the ineffective assistance of counsel at trial. Specifically, he contends that counsel was ineffective for failing to: meet with him prior to trial; adequately investigate the confidential informant; discuss the petitioner's testimony with him prior to trial; and object to testimony regarding a TBI forensic report. The State argues that the record and the law do not support the petitioner's claim and, further, that the petitioner has failed to carry his burden of proving his allegations by clear and convincing evidence.

This court reviews a claim of ineffective assistance of counsel under the standards of <u>Baxter v. Rose</u>, 523 S.W.2d 930 (Tenn. 1975), and <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The petitioner has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. <u>Strickland</u>, 466 U.S. at 687, 104 S. Ct. at 2064; <u>Goad v. State</u>, 938 S.W.2d 363, 369 (Tenn. 1996); <u>Butler v. State</u>, 789 S.W.2d 898, 899 (Tenn. 1990). The failure to prove either deficiency or prejudice justifies denial of relief; therefore, the court need not address the components in any particular order or even address both if one is insufficient. <u>Goad</u>, 938 S.W.2d at 370. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2068.

The test in Tennessee to determine whether counsel's performance was deficient is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. <u>Baxter</u>, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2065; <u>State v. Honeycutt</u>, 54 S.W.3d 762, 769 (Tenn. 2001). Therefore, in order to prove a deficiency, a petitioner must show "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." <u>Goad</u>, 938 S.W.2d at 369 (citing <u>Strickland</u>, 466 U.S. at 688, 104 S. Ct. at 2065).

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Nichols v. State</u>, 90 S.W.3d 576, 587 (Tenn. 2002) (citing <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2065). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. <u>Henley v. State</u>, 960 S.W.2d 572, 579 (Tenn. 1997); <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982).

Here, the petitioner argues that counsel's representation was deficient in four specific areas: 1) Counsel only conferred with the petitioner in court and, even then, did not thoroughly discuss the case with him; 2) Counsel failed to adequately investigate the character of the confidential informant;

3) Counsel did not discuss any testimony with the petitioner until after the State presented its case; and 4) Counsel failed to register a timely objection to testimony from the TBI at trial regarding a forensic report from the first drug transaction. The petitioner contends that all of these alleged deficiencies resulted in prejudice to him, but he only mentions two instances of prejudice. Specifically, he contends that he would have not been likely to testify if counsel had discussed his rights with him prior to trial. He said he was prejudiced by not being able to fully weigh his right to testify. Additionally, he argues that counsel would have learned of the confidential informant's undesirable character had he investigated him more fully prior to trial and that the petitioner was prejudiced when counsel did not discover these character flaws. The petitioner does not cite any instances of the confidential informant's bad character; instead, he merely concludes that this information could have been utilized at trial. Basically, the petitioner contends that the post-conviction court's findings of fact after the post-conviction hearing were in error. He argues that he satisfied the two-part test set forth in Strickland v. Washington and that the post-conviction court erred in finding that he had not carried his burden.

It is well settled that the post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). Those findings of fact are afforded the weight of a jury verdict, and this court is bound by the findings unless the evidence in the record preponderates such. Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This court may not reweigh or reevaluate the evidence nor may it substitute its inferences for those drawn by the post-conviction court. State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed de novo with a presumption of correctness. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

Here, the post-conviction court found that counsel met with the petitioner on multiple occasions prior to trial and cited on the record that they met no less than three times. The court recalled that the petitioner was in court with counsel at least that many times prior to trial. The court credited counsel's testimony that he met with the petitioner on multiple occasions. The record does not preponderate against this finding, and, other than his own testimony, the petitioner has provided no evidence to support his argument. Therefore, we conclude the post-conviction court properly found that counsel was not ineffective regarding his meetings with the petitioner.

Next, as to the petitioner's contention that counsel did not adequately investigate the confidential informant, the petitioner has provided no proof that could have been presented to impeach the credibility of the informant. Therefore, the evidence does not preponderate against the findings of the post-conviction court.

Next, the petitioner contends that counsel was deficient for not discussing his testimony with him until after the State concluded its proof. The petitioner contends that he might not have testified if counsel had discussed the case with him. However, during the post-conviction hearing, counsel testified that he informed the petitioner that the State had not presented a strong case and that the petitioner would only hurt his chances of prevailing if he took the stand. The post-conviction court

credited counsel's testimony that he tried to convince the petitioner that he did not need to testify but that the decision was the petitioner's. The evidence does not preponderate against the findings of the post-conviction court that counsel advised the petitioner against testifying.

Finally, the petitioner contends that counsel should have objected to TBI Agent Eaton's testimony regarding the weight of the cocaine from the first controlled buy. However, he does not argue how the failure to object resulted in prejudice. The failure to prove either deficiency or prejudice justifies denial of relief. Goad, 938 S.W.2d at 370. The petitioner has not met his burden of proving the ineffectiveness of counsel.

Conclusion

Based on the foregoing and the record as a whole, we affirm the denial of relief from the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE